THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SYMBOLOGY INNOVATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG DR. PEPPER, INC.<br><br>Defendant. | Civil Case No. 2:23-cv-00249-JRG<br><br>JURY TRIAL DEMANDED |

## MOTION TO STRIKE AND DISMISS INEQUITABLE CONDUCT DEFENSE AND COUNTERCLAIM [DKT. NO. 7]

**I.  SUMMARY.**

Plaintiff Symbology Innovations, LLC ("Plaintiff") moves to strike and dismiss both Keurig Dr. Pepper, Inc.'s ("KDP" or "Defendant") (1) Third Affirmative Defense, inequitable conduct [Dkt. No. 7 at 13] and (2) Counterclaim 3 – Inequitable Conduct in the Defendants' Answer and Counterclaims. [Dkt. No. 7 at 18]. KPG fails to do anything more than parrot the elements of inequitable conduct and vaguely accuse Leigh Rothschild *or someone else involved with the prosecution of the Patents-in-Suit* of having committed fraud on the patent office.  As such, the Court should grant Plaintiff's Motion to Strike Defendant's Third Affirmative Defense relating to Inequitable Conduct and Dismiss KDP's Counterclaim No. 3, also related to inequitable conduct. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

**II.  LEGAL STANDARD.**

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). Rule 9(b) governs inequitable conduct claims. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575

F.3d 1312, 1326 (Fed. Cir. 2009). "Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* (Internal quotation marks and bracket omitted). To meet this standard, the Federal Circuit—like other circuits—requires the pleading party to identify "the specific **who**, what, when, where, and **how of the material misrepresentation or omission committed before the PTO**." *Id.* at 1327.

Thus, a well-pleaded claim for inequitable conduct must allege facts demonstrating that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false information; and (2) the individual did so **with a specific intent to deceive the PTO**." *Id.* at 1327 n.3. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326-27.

With respect to materiality, "[w]here a patent applicant fails to disclose prior art to the PTO, the prior art is **but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.**" *Therasense*, 649 F.3d at 1292.

### III.   ARGUMENT.

KDP's complaint comes nowhere near meeting the standards to plead fraud under Rule 9(b) of the Federal Rules of Civil Procedure and established Federal Circuit case law for at least three (3) reasons, including (1) not identifying with particularity the "who" that committed fraud on the USPTO, (2) not satisfying the but-for materiality standard for purported prior art, and (3) failure to adequately plead "specific intent." *See e.g. Therasense, Inc.*, 649 F.3d at 1285 (Fed. Cir. 2011); *Exergen Corp.*, 575 F.3d at 1327 (Fed. Cir. 2009).

### A.   KDP Failed to Adequately Plead the "Who" That Committed Fraud.

KDP's defense and counterclaim relating to alleged inequitable conduct fail to adequately identify with particularity "who" committed specific acts with specific intent. For example, KDP recites in Paragraph 31, 39, 41, 42, 43, 62, 65, and 66, that a person committing the fraud is either the inventor "and/or the representatives associated with the filings," which is simply not specific enough to satisfy Rule 9(b). *See Exergen Corp.,* 575 F.3d at 1327 (Fed. Cir. 2009).

> ¶ 31 "Based on the provisional application's disclosures and Mr. Rothschild's firsthand involvement with BarPoint.com, it was ***known*** to Mr. Rothschild ***and/or the representatives associated with the filing and prosecution of the applications for the Patents-in-Suit***, that the BarPoint system described in the provisional applications was offered for sale and publicly used prior to the filing dates of the provisional applications."
>
> ¶ 39 "Despite Mr. Rothschild having deep knowledge of the BarPoint system, the Rothschild Patents, and ***other material,*** non-cumulative prior art related to technology Symbology alleges the Patents-in-Suit cover, Mr. Rothschild ***and/or the representatives associated with the that recites "and/or the representatives associated with the filing and prosecution of the application for the Patents-in-Suit***"
>
> ¶ 41 "Mr. Rothschild ***and/or the representatives*** associated with the filing and prosecution of the applications for the Patents-in-Suit, knew of the BarPoint system, the Rothschild Patents, and the prior art systems identified in the specification, and, on information and belief, deliberately failed to disclose the prior art to the USPTO in connection with prosecuting the applications for the Patents-in-Suit, with the intent to deceive the examiner and the USPTO."
>
> ¶42 "Had Mr. Rothschild ***and/or the representatives*** associated with the filing and prosecution of the applications for the Patents-in-Suit made the examiner aware of the BarPoint system, the Rothschild Patents, and that the prior art systems identified in the specification anticipate and/or render obvious each and every element of the independent claims of the Patents-in-Suit under Symbology's characterization of the alleged infringing activity, the examiner would not have allowed the claims to issue."
>
> ¶43 "The failure of Mr. Rothschild ***and/or the representatives associated with the filing and prosecution*** of the applications for the Patents-in-Suit to disclose the BarPoint system and the Rothschild Patents prior art, as

well as other material prior art, was with the intent to deceive the USPTO."

¶62 "Despite the purported novelty identified in the specification and by the examiner during prosecution of the parent application, Mr. Rothschild ***and/or the representatives associated*** with the filing and prosecution of the applications for the Patents-in-Suit, undertook a concerted effort to omit the limitation related to the alleged improvement that had been expressly included in Claim 1 of the '773 Patent in order to overcome the examiner's rejection based on anticipation grounds."

¶65 "Had Mr. Rothschild ***or the representatives associated*** with the filing and prosecution of the applications for the Patents-in-Suit made the examiner aware of the undisclosed, material, non-cumulative prior art in Mr. Rothschild's possession, the examiner would not have allowed the independent claims of the Patents-in-Suit to issue."

¶66 "Mr. Rothschild ***and/or the representatives*** associated with the filing and prosecution of the applications for the Patents-in-Suit intended to deceive the USPTO by intentionally failing to disclose the BarPoint system, the Rothschild Patents, and the full capabilities of the prior art barcode scanning applications identified in the specification, in order to recapture patent rights to subject matter Mr. Rothschild no longer controlled."

[Dkt. No. 7 at ¶¶ 31, 39, 41, 42, 43, 62, 65, and 66].

The lack of specificity in KDP's counterclaim relating to inequitable conduct makes it impossible for Plaintiff to defend against as KDP fails to identify "who" is this alleged representative with specific particularity required to allow Plaintiff to possibly follow up with those individuals. As such, KDP's pleading does not satisfy Rule 9(b) requiring it to be dismissed without prejudice until KDP can provide the required specify as to "who" is doing "what" to commit fraud and "when" she did it.

### B. KDP Failed to Adequately Plead the "Materiality" of the Prior Art.

KDP's shotgun approach to identifying purportedly "material" prior art leaves open the possibility that it could even include references not even identified. This makes it impossible to defend

4

against.  KDP identifies the following litany of alleged prior art without even certifying the references qualify as prior art or where ever even actually disclosed to the public. [*See e.g.* Dkt. No. 7 at ¶¶ 13, 35].

KDP's ¶ 13 recites "The asserted claims of the Patents-in-Suit are ***anticipated and/or rendered obvious*** by, inter alia, BarPoint.com; Neomedia's Neo Reader; Microsoft's Smart Tags; Android's Shop Savvy; Red Laser; ScanBuy; U.S. Serial No. 60/118,051; U.S. Serial No. 60/187,646; U.S. Serial No. 60/185,546; U.S. Patent Application 2008/0004978; U.S. Patent No. 6,430,554; and/or U.S. Patent No. 6,651,053." [Dkt. No. 7 at ¶ 13].

KDP's mere assertion that these "anticipated and/or rendered obvious" with no explanation as to how or why or what prior art would even be identified to be sufficient to satisfy a materiality standard under *Therasense*.  KDP makes similar inadequate disclosures in the Complaint at ¶ 35 when it recites "each anticipate and/or render obvious each and every element of ***Claim 1 of the '752 Patent and/or Claim of the '369 Patent***." Unfortunately for KDP, it only identifies two of the four asserted patents or the actual "Patents-in-Suit."  *See* Dkt. No. 1 at 3. Specifically, KDP flat out ignores asserted patents, U.S. Patent 7,992,773 [Dkt. Nos. 1-1, 1-5] and U.S. Patent 8,936,190 [Dkt. Nos. 1-4, 1-8].

Indeed, KDP's failures in pleading inequitable conduct are best articulated by the Federal Circuit's holding in *Therasense* that found the previous standard of proof prior to 2009 was too low resulting in a "plague" on the courts and the patent system. *See Therasense,* 649 F.3d at 1289 (Fed. Cir. 2011).  The Federal Circuit remarked that over time, charging inequitable conduct became a "common litigation tactic" and "[l]eft unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system." *Id.* at 1289. The Federal Circuit also noted that "[w]ith inequitable conduct casting the shadow of a hangman's noose, it is unsurprising that patent prosecutors regularly bury PTO examiners with a deluge of prior art references, most of which have marginal value." *Id.*

In *Therasense*, the Federal Circuit recounted how inequitable conduct in patent law evolved from a trio of Supreme Court cases interpreting the doctrine of unclean hands. *Id.* at 1285 (*citing Keystone Driller Co. v. General Excavator Co.*, 54 S.Ct. 146 (1933), *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 64 S.Ct. 997(1944), *overruled on other grounds by Standard Oil Co. v. United States*, 97 S.Ct. 31 (1976), and *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 65 S.Ct. 993 (1945)).

A claim for inequitable conduct requires a finding of both intent to deceive and materiality. *Id.* at 1287. The Federal Circuit rejected prior lower standards that permitted proof of intent to deceive on findings of gross negligence or negligence, or that permitted a reduced showing of intent if the record contained a strong showing of materiality. Instead, the Federal Circuit held that to "prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO" and must show "but-for materiality," meaning "[w]hen an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1290–91.

Here, KDP broadly asserts that all patent claims of all the Patents-in-Suit are unenforceable due to a failure to disclose alleged material prior art. [Dkt. No. 7 at 65]. But KDP's pleading fails the "but-for materiality" requirement of *Therasense* as it does not articulate how all of the patent claims in Patents-in-Suit were derived from one and/or more prior art references raise to the level of materiality when tellingly, not one of the multitude of Patent Examiners or Supervisors at the USPTO identified any of the alleged prior art, an indication that it is not material and therefore at best cumulative.

**C.   KDP Failed to Adequately Plead the "Specific Intent" to Commit Fraud**.

KDP does not properly plead the "specific intent" required under *Therasense*. KDP cannot satisfy the "specific intent to deceive" requirement of *Therasense* because it has not pled how that the

6

individuals involved in the prosecution of all of the patent claims of the Patents-in-Suit (a) knew that the information related to the purported allegation of derivation was material, (b) made a deliberate decision not to disclose that information, and (c) did so in order to deceive the USPTO into granting all the claims of the Patents-in-Suit.  Thus, KDP fails as well on this third *Therasense* requirement to plead the proper specific intent. As such, the Court should grant Plaintiff's motion to strike/dismiss KDP's affirmative defense and counterclaim both relating to inequitable conduct.  *See Exergen Corp.*, 575 F.3d at 1327 n.3 (Fed. Cir. 2009).

## IV.     CONCLUSION.

Plaintiff has met its burden for the Court to Grant this Motion to Dismiss an affirmative defense and counterclaim related to inequitable conduct. Here, KDP simply fails to satisfy the pleading standard by (1) not identifying with particularity the "who" that committed fraud on the USPTO, (2) not satisfying the but-for materiality standard for purported prior art, and (3) failure to adequately plead "specific intent." *See Exergen Corp*, 575 F.3d at 1329 (holding that a defendant's failure to identify the "who" of material omissions and misrepresentations was insufficient to plead the defense of inequitable conduct).

//

| | |
|---|---|
| Dated:  July 10, 2023 | Respectfully Submitted,<br><br>*/s/ Randall Garteiser*<br>Randall Garteiser<br>  Texas Bar No. 24038912<br>  rgarteiser@ghiplaw.com<br>Christopher A. Honea<br>   Texas Bar No. 24059967<br>   chonea@ghiplaw.com<br>M. Scott Fuller<br>  Texas Bar No. 24036607<br>  rgarteiser@ghiplaw.com<br><br>**GARTEISER HONEA, PLLC**<br>119 W. Ferguson Street<br>Tyler, Texas 75702<br>Telephone: (903) 705-7420<br><br>**COUNSEL FOR PLAINTIFF** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above document has been served to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system on.

*/s/ Randall Garteiser*
Randall Garteiser

8