**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **SYMBOLOGY INNOVATIONS, LLC,** | **Case No. 2:23-cv-249** |
| **Plaintiff,** | **Jury Trial Demanded** |
| **v.** | |
| **KEURIG DR. PEPPER, INC.** | |
| **Defendant.** | |

## BRIEF IN OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS

## TABLE OF CONTENTS

I.  KDP Has Not Met Its Burden ................................................................................ 1

   A.  Claim 1 of the '107 Patent Is Not Representative ............................................. 1

   B.  There Is a Genuine Issue of Material Fact ....................................................... 5

II.  The Asserted Claims are Patent Eligible Under 35 U.S.C. § 101 ............................ 6

   A.  KDP's Eligibility "Analysis" is Defective ....................................................... 10

      1.  Alice Step One – The Claims are Not Directed to an Abstract Idea ................... 10

      2.  *Alice* Step Two – The Asserted Claims Include an Inventive Concept .............. 13

   B.  Claim Construction ...................................................................................... 15

III.  The Complaint Is Sufficiently Pled ....................................................................... 19

IV.  Conclusion ........................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Actus, LLC v. Bank of Am. Corp.*, No. 2-09-cv-102-TJW, 2010 WL 547183, at *2 (E.D. Tex. Feb. 10, 2010) ................................................................................................................................. 21

*AlexSam, Inc. v. Cigna Corp.,* 2020 WL 7233403 at *4-5 (E.D. Tex. Oct. 26, 2020) .............................. 6

*Alice*, 134 S.Ct. at 2356 ................................................................................. 8, 13, 14, 15

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300 (Fed. Cir. 2016)........................ 9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................... 1, 20, 22

*Bancorp Servs.*, 687 F.3d at 1278 ..................................................................................... 13

*Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016) ........ 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) ......................................................... 1, 20, 21

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018)...................................................... 6, 9, 10

*BillJCo, LLC v. Cisco Sys., Inc.*, No. 2:21-cv-00181-JRG, 2021 WL 6618529, at *4 (E.D. Tex. Nov. 30, 2021) ..................................................................................................................... 21

*Cellspin Soft, Inc. v. Fitbit, Inc., et al.,* 927 F.3d 1306, 1319 (Fed. Cir. 2019) ........................................ 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) .......................................................................................................... 1, 12

*DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1258-59 (Fed. Cir. 2014).................. 10, 11, 14

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) ......................................................... 20

*ILife Techs., Inc. v. Nintendo of America, Inc.,* 2021 WL 117027 at *2 (Fed. Cir. Jan. 13, 2021) .......... 10

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012)20, 21

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) ................................................. 20, 21

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.CT. 1289, 1297) ...................... 13

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007).............................................. 21

*Motiva Pats., LLC v. Sony Corp.*, No. 9:18-CV-00180-JRG-KFG, 2019 WL 4737051, at *4 (E.D. Tex. Sept. 27, 2019) ........................................................................................................................ 20

*O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019) ........................................... 20

*Perdiemco, LLC v. Industrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 WL 5719697, at *7 (E.D. Tex. Sep. 21, 2016) ....................................................................................................................... 1, 2

*PPS Data LLC v. Jack Henry & Assoc., Inc.,* 404 F.Supp.3d 1021, 1039 (E.D. Tex. 2019) .......... 8, 9, 10

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) ............... 19, 20

*SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d 1301, 1312 (Fed. Cir. 2019) ............................................. 11

*SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ...................................... 14

*Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ........................................................................................ 19

*Slyce,* 2020 WL 278481 at *4 ................................................................................................................... 7

*SRI Int'l, Inc. v. Cisco Sys., Inc.,* 930 F.3d 1295, 1304 (Fed. Cir. 2019) .................................................. 9

*TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020) ..................................................... 11

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ....................... 11

*Versata Software, Inc. v. NetBrain Technologies, Inc.*, No. 13-cv-676-LPS-CJB, 2015 WL 5768938, at *4 (D. Del. Sep. 30, 2015) ......................................................................................................... 2

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) ...................................... 20

**Statutes**

35 U.S.C. § 101 ........................................................................................................................... passim

35 U.S.C. § 282 ............................................................................................................................. 1, 2, 5

Plaintiff Intercurrency LLC ("Plaintiff" or "Symbology") respectfully submits this Brief in Opposition to Defendant Keurig Dr. Pepper, Inc. ("Defendant" or "KDP") Rule 12(b)(6) Motion to Dismiss [Dkt. No. 6] ("KDP's Motion").  As will be shown in greater detail herein below, KDP's Motion lacks merit and should be summarily denied.

## I.     KDP Has Not Met Its Burden

KDP's Motion should be denied.  Plaintiff has plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  There is at least a "reasonable inference that the [KDP] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### A.  Claim 1 of the '752 Patent Is Not Representative

Each claim is entitled to an independent presumption of validity. "Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. Accordingly, a party that asserts invalidity bears the burden of establishing that each challenged claim is patent-ineligible. This Court has stated that "when the movant relies on a representative claim in its § 101 analysis, it bears the burden of showing that the other asserted claims are 'substantially similar and linked to the same abstract idea.'" *Perdiemco, LLC v. Industrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 WL 5719697, at *7 (E.D. Tex. Sep. 21, 2016) (*quoting Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)). A challenger cannot meet that burden by selecting one claim and try to shift the burden onto the patent holder to demonstrate that

other claims are of a different character. Any such rule would violate the clear statutory prescription of § 282.

Defendant declares, without complete analysis, that claim 1 of the '752 patent is representative of all Asserted Claims[1] in the four (4) asserted patents. (Dkt. No. 6, Motion at 7-8 ("Motion")). Mere conclusory statements, however, are not enough to meet Defendant's burden to establish that claim 1 is, in fact, representative of all asserted claims for purposes of the abstract idea analysis. *See, e.g., Versata Software, Inc. v. NetBrain Technologies, Inc.*, No. 13-cv-676-LPS-CJB, 2015 WL 5768938, at *4 (D. Del. Sep. 30, 2015) ("[W]ith Defendants having given negligible attention to the remainder of the claims, the Court does not find it wise or appropriate to make a final determination as to the subject matter eligibility of such claims at this time"); *Perdiemco*, 2016 WL 5719697, at *7.

Moreover, Defendant is factually incorrect in their assertion that claim 1 is representative. While claim 1 recites certain important features of the inventive concept, other asserted claims recite distinct claim limitations that further define variations of the inventiveness of the claimed subject matter. For example, dependent claims of the '752 patent further highlight non-representative differences as shown below that are not present at all in Claim 1 of the '752 Patent. (Dkt. No. 1-2 at 17-18).

---

[1] Plaintiff has not even reached the stage in the litigation to disclose its "Asserted Claims" in the four asserted patents-in-suit (Dkt. Nos. 1-1, 1-2, 1-3, 1-4), such that the sweeping allegation by Defendant that all the claims are "representative of claim 1 of the '752 patent, is simply not a true statement.

BRIEF IN OPPOSITION TO MOTION TO DISMISS                                             2

~~with the portable electronic device.~~

**2**. The method of claim **1**, further comprising enabling a user of the portable electronic device to select one or more presets before the symbology is detected. 55

**3**. The method of claim **2**, wherein the presets include at least one of a selection of one or more visual detection applications to handle scanning operations, a selection of one or more visual detection applications to handle image capture operations, a maximum number of applications configured to 60 receive a decode string, an amount of information to be displayed, the type of information to be displayed, and e-commerce options.

**4**. The method of claim **1**, wherein one or more visual detection systems are configured to run in the background 65 with respect to other systems associated with the mobile device, the visual detection systems comprising the one or

*Figure 1 - Dkt. No. 1-2, '752 Patent, Claims 2, 3, 4.*

# 14

more visual detection applications and one or more visual detection devices, the one or more visual detection devices configured to detect the symbology associated with the object.

5  **5**. The method of claim **1**, wherein the one or more visual detection systems are configured to automatically detect the symbology.

**6**. The method of claim **5**, further comprising:

alerting the user when an image containing symbology has
10  been detected;

asking the user if decoding of the symbology is desired; and

receiving a reply from the user.

15  **7**. The method of claim **1**, wherein detecting the symbology comprises detecting the symbology in response to a user initiated trigger of a visual detection device.

**8**. The method of claim **1**, wherein sending the decode string to one or more visual detection applications for pro-
20  cessing and sending the decode string to a remote server for processing further comprises:

instructing the one or more visual detection applications and remote server to identify the object associated with the decode string; and

25  instructing the one or more visual detection applications and remote server to retrieve information about the object.

**9**. The method of claim **1**, wherein the method further comprises:
30  analyzing the decode string to determine a category of the object; and

selecting one or more appropriate applications to process the decode string when the one or more visual detection
35  applications are not pre-selected, the selection based in part on the category of the object.

*Figure 2 - Claims 5-9 of the '752 patent, Dkt. No. 1-2 at 17.*

> **10**. The method of claim **9**, wherein the method further comprises:
>
> determining if multiple applications are deemed to be appropriate to process the decode string; and
> enabling the user to select one or more applications when multiple applications are deemed to be appropriate.
>
> **11**. The method of claim **1**, further comprising enabling the user to store the information.
>
> **12**. The method of claim **1**, further comprising providing e-commerce options to allow the user to proceed to a purchasing process for purchasing the object, wherein the object is an article of commerce.
>
> **13**. The method of claim **1**, further comprising displaying the information about the object with the digital image.
>
> **14**. The method of claim **1**, further comprising overlaying the information about the object while displaying the digital image.
>
> **15**. The method of claim **1**, wherein visual search technology is used to decode the symbology.
>
> **16**. The method of claim **1**, wherein both the digital image and the information associated with the digital image are displayed on the portable electronic device.

*Figure 3 - Claims 11-16 of the '752 patent (Dkt. No. 1-2 at 17).*

Having presented no argument or analysis with respect to these elements and the other claims in the additional three (3) asserted patents (Dkt. Nos. 1-1, 1-3, 1-4) Defendant KDP has failed to meet its burden. Section 282 precludes the shortcut Defendants would like to take here. Plaintiff is entitled to a presumption of validity on every claim.

### B.  There Is a Genuine Issue of Material Fact

As shown herein, the Asserted Claims are drawn to patent-eligible subject matter.  Even if KDP could prove the Asserted Claims are directed to an abstract idea (which it cannot), KDP has nevertheless failed to establish a lack of factual dispute with respect to the allegations of the Complaint

relating to the existence of an inventive concept.  For example, KDP fails to meet its burden to deny the Complaint's factual basis as to "whether a claim element or combination of elements is **well-understood**, **routine** and **conventional** to a skilled artisan in the relevant field," which is a question of fact that must be "proven by clear and convincing evidence."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (emphasis added).

## II.    The Asserted Claims are Patent Eligible Under 35 U.S.C. § 101

KDP's Motion raises the now customary boilerplate argument that all Asserted Claims are invalid because they allegedly fail to recite patent-eligible subject matter.  KDP's Motion is premised on a gross oversimplification of the Asserted Claims and the underlying notion that virtually no invention remotely relating to asset trading can be patent eligible.  Accordingly, KDP's Motion fails on the merits and should be denied.

First and foremost is the obvious fact that this issue is presented to the Court at the pleading stage without the benefit of any established record or discovery.  As such, the Court is left with zero developed record from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art *as of September 15, 2010*, not to mention a lack of familiarity with the disclosures and an absence of claim construction.  For all of the reasons this Court has previously outlined, *see, e.g., AlexSam, Inc. v. Cigna Corp.,* 2020 WL 7233403 at *4-5 (E.D. Tex. Oct. 26, 2020) (denying motion to dismiss), the Asserted Claims here cannot and should not be summarily invalidated simply because KDP refuses to accept the non-abstract nature of, and numerous inventive concepts captured in, the Asserted Claims. KDP's lack of an actual representative claim further compounds the burden KDP fails to meet.

Again, the Asserted Claims of the patents are presumptively novel and non-obvious, presumptively drawn to patent-eligible subject matter, and presumptively properly examined and

BRIEF IN OPPOSITION TO MOTION TO DISMISS                                                    6

allowed by the Examiner(s) at the United States Patent Office.  *See, e.g., Cellspin Soft, Inc. v. Fitbit, Inc., et al.,* 927 F.3d 1306, 1319 (Fed. Cir. 2019).

Further, at the pleading stage, the Court is required by law not only to accept all factual allegations in the operative Complaint as true, but also to draw all reasonable inferences in the patentee's favor.  *Slyce,* 2020 WL 278481 at *4.  Here, just as in the *Cellspin* case, the Complaint contains a multitude of specific and plausible statements of fact establishing the non-abstract nature of the Asserted Claims.

More specifically, the Complaint alleges that, as of the Date of Invention in September 15, 2010:

> 21.     The '369 Patent contains twenty-eight claims including three independent claims and twenty-five dependent claims.
>
> 22.     The priority date of the '369 Patent is at least as early September 15, 2010. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

*Figure 4 - Dkt. No. 1 at ¶¶ 21, 22.*

> 39.     The '369 Patent was examined by Primary United States Patent Examiner Allyson Trail.  During the examination of the '369 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 235/375; 235/379; 705/14.1; 709/39; and 709/80.
>
> 40.     After conducting a search for prior art during the examination of the '369 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: US 2007/0216226; US 2007/0291534; US 2008/0201310; US 2009/0099961; and US 2010/0280896; and US 2010/0280960.
>
> 41.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '369 Patent to issue.  In so doing, it is presumed that Examiner Trail used her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trail had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).  In view of the foregoing, the claims of the '369 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '369 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Trail.

*Figure 5 - Dkt. No. 1 at ¶¶ 39, 40, 41.*

The facts as plead are plainly relevant to the presence of inventive concepts captured in the Asserted Claims. These specific factual allegations in the Complaint define the state of the art as of the Date of Invention and provide a basis in fact to conclude that the Asserted Claims are indeed patent-eligible.

These specific factual allegations, as well as the common written specification of the Asserted Patents, define benefits and technological improvements captured in the Asserted Claims over the prevailing art as of April 2007.  *See e.g.* Dkt. No. 1 at ¶¶ 16-25, Ex. A. Thus, the Asserted Claims are patent-eligible.  *See PPS Data LLC v. Jack Henry & Assoc., Inc.,* 404 F.Supp.3d 1021, 1039 (E.D. Tex. 2019) ("when the claimed technology overrides the routine and conventional sequence of events in order to provide a technological benefit, it is eligible at *Alice* Step Two") (citing *SRI Int'l, Inc. v. Cisco*

*Sys., Inc.,* 930 F.3d 1295, 1304 (Fed. Cir. 2019).  Stated differently, claims such as these include an inventive concept when they provide a technological solution to a technological problem.  *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300 (Fed. Cir. 2016).

The inventions of the Asserted Claims solve the technical problem facing the industry in 2010 associated with the difficulty traders had with knowledge of costs and fees in a chosen currency. *See e.g.,* Dkt. No. 1 at ¶¶ 15-43. Moreover, the fact that the Complaint recites the disclosures and teachings *as taken directly from the written specification* of the Asserted Claims is fatal to KDP's Motion.

In *Berkheimer*, the Court of Appeals fully credited the specification's disclosure of the state of the art, as well as its recitation of improvements over the art, as sufficient to create fact issues precluding summary judgment, as long as such were captured in the claims.  *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1369 (Fed. Cir. 2018); *see also PPS Data,* 404 F.Supp.3d at 1040-41 ("The Federal Circuit routinely relies on factual assertions in patent specifications not only as *some* evidence, but *conclusive* evidence of inventiveness") (emphasis added).  Of course, the benefits of the inventions, as noted in the Complaint, are conferred due to the inventive concepts as claimed, as opposed to the mere practice of the "abstract idea" suggested by KDP. KDP's Motion at 9-10.

Once again, these specific factual allegations, which must be taken as true, define benefits and technological improvements captured in the Asserted Claims over the prevailing art as of April 2007. As such, the Asserted Claims are patent-eligible.  As noted, the inventions define unconventional approaches over the existing art as of April 2007, in the form of a system that allows for conducting security transactions in a preferred currency regardless of what original or market currency the securities are being traded in and where the transaction may take place.  Formerly, the prior art did not show prices as well as conduct all transactions in a currency preferred by an investor, regardless of whatever currency being used in the primary market for the security/asset. *See* Dkt. No. 1 at ¶ 18.

Again, and as noted above, these factual assertions are drawn directly from the intrinsic record of the written specification, and explain how the Asserted Claims capture unconventional technological improvements over the art. As such, they can be considered as conclusive evidence of the facts as stated. *Berkheimer,* 881 F.3d at 1369; *PPS Data,* 404 F.Supp.3d at 1040-41. Such inventions satisfy the threshold requirement of 35 U.S.C. § 101 and are plainly patent eligible. *See Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016); *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1258-59 (Fed. Cir. 2014); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1301-02 (Fed. Cir. 2016). At a minimum, the facts as presented in the Complaint satisfy the *Cellspin* standard, and KDP's Motion should be denied.

### A.  KDP's Eligibility "Analysis" is Defective

As noted above, the factual allegations of the Complaint in this case are more than sufficient to state a plausible claim for relief, and KDP's Motion should be denied.  However, to the extent the Court is inclined to evaluate the eligibility of the Asserted Claims on this record, Plaintiff would show that, not only is KDP's "analysis" severely defective, but the Asserted Claims should be affirmatively deemed patent-eligible under 35 U.S.C. § 101.

### 1.  Alice Step One – The Claims are Not Directed to an Abstract Idea

First, with respect to *Alice* Step One, the Asserted Claims are not directed to an abstract idea, and the misguided notion that the Asserted Claims recite mere "conventional components" is both wrong and entirely irrelevant. *See ILife Techs., Inc. v. Nintendo of America, Inc.,* 2021 WL 117027 at *2 (Fed. Cir. Jan. 13, 2021) ("the district court erred to the extent that it incorporated conventionality of claim elements at step one"; and "[a] claim is not directed to an abstract idea simply because it uses conventional technology").

At the Step One phase, the proper approach is to determine what the Asserted Claims are "directed to" by evaluating what the patent itself asserts as the "focus" of the claimed advance over the prior art. *TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020). Such an analysis must remain true to the language of the claims themselves in light of the specification and **must be careful to avoid overgeneralizing** the claims. *Id.* (citing cases). The focus of the claimed advance over the prior art in this case is a system that allows for a trading server coupled to a market and currency exchange server, wherein the costs and fees associated with the trading server are dynamically changed in accordance with the prevailing exchange rate updated constantly. This is not an abstract idea. To the contrary, this is a solution to the technical problem facing the industry in 2010 associated with the difficulty of a user obtaining information from a website that a user is directed to by capturing an image of a QR code on a particular object. And KDP attempts to repeatedly rely on a concurrence opinion from Judge Mayer, in *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring), setting aside this is not even controlling law, "[t]he question of whether a patent is for a 'technological invention' is fact-specific and must be considered on a case-by-case basis." *See SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d 1301, 1312 (Fed. Cir. 2019).

Here, experts are needed here to assist the Court in determining what is a technological invention.

The Asserted Claims do not fall within the contours of *Ultramercial*. The Asserted Claims have physical, tangible and specialized components that are directed to more than the performance of an abstract idea. Thus, the present claims recite a technical solution to a problem arising in the realm of computing networks, which is significantly more than an abstract idea, consistent with the decision in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed Cir. 2014).

Thus, the Asserted Claims have a clear, concrete and tangible form in that they are directed to providing utilize an unconventional specialty trading server coupled to a market and currency exchange server, wherein the costs and fees associated with the trading server are dynamically changed in accordance with the prevailing exchange rate updated constantly, with tangible and concrete hardware that has been adapted for that purpose.

Here, KDP argues that the Asserted Claims are "[a]t a high level, this claim describes the most generic functional steps of a standard computer (i.e., capturing, detecting, decoding, sending, receiving, and displaying data)." KDP's Motion at 15. KDP further argues that "[t]he claim purports to implement the steps with conventional components like a "portable electronic device," a "remote server," a "display device," and generic "visual detection applications" does not make it any less abstract.'" KDP's Motion at 15 (*with no case law citation provided to the Court*). This assertion is based on a gross oversimplification of the Asserted Claims, and is simply false.   One example of a unique component of the claimed invention in Claim 1 of the '752 patent is a "decode string."   But KDP ignores this.

Instead, Defendant KDP asserts that claim 1 of the '752 patent fails to satisfy Step 1 of the *Alice* Test because "Claim 1 of the '752 Patent **does not** include any specific limitations or steps regarding **extracting data** or **decoding** the data."  (Motion at 12-13 (Dkt. No. 6, pdf pages 17-18 of 25)). Yet, Defendant KDP in its own motion provides the Court with some claim elements being performed, but not like a mere scanner detecting letters in the alphabet as KDP attempts to trivialize the Claim 1 of the '752 Patent inventions too.  As such, KDP is mistaken that *Content Extraction and Transmission, LLC v. Wells Fargo Bank, Nat Ass'n*, 776 F.3d 1343 at 1349 (Fed. Cir. 2014), that involved simply "optical character recognition technology," is related to this case, as it is completely distinguishable. Here, a symbol is being detected, not a well-known character that even a human could recognize.  There is no

way a human being can look at a symbol and know where that would send a person that captured a QR code and how that person could find a specific website, which the invention does do.

### 2.    *Alice* Step Two – The Asserted Claims Include an Inventive Concept

As discussed above, the Asserted Claims are not directed to an abstract idea. Further, even assuming, *arguendo*, that the Asserted Claims are directed to an abstract idea, the Asserted Claims nonetheless include an inventive concept.

The second step of the *Alice* analysis requires determining whether a claim that is found to be directed to an abstract idea includes additional elements that transform the nature of the claim into something "significantly more" than the ineligible subject matter. See *Alice*, 134 S.Ct. at 2355. This requires that one "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.CT. 1289, 1297).

Although the machine-or-transformation test is not the sole test governing a Section 101 analyses, it can provide a "useful clue" in the second step of the *Alice* framework. *Bancorp Servs.*, 687 F.3d at 1278 (citing *Bilski*, 561 U.S. at 604) ("[W]hile not the sole test for deciding whether an invention is a patent-eligible 'process,'" the machine-or-transformation test "remains a 'useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101").

The Supreme Court has acknowledged that the machine-or-transformation test "may well provide a sufficient basis for evaluating processes similar to those in the Industrial Age—for example,

inventions grounded in a physical or other tangible form." *Bilski*, 561 U.S. at 605. Here, application of the machine-or-transformation test confirms the claims are patent-eligible.

A claimed process can be patent-eligible under § 101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (*en banc), aff'd, Bilski*, 561 U.S. 593. The Asserted Claims are tied to a particular machine or apparatus. In particular, the Asserted Claims are tied to a utilize an unconventional specialty trading server that is linked to both currency exchange server and market exchange server. *See* Ex. B, '863 Patent, Cl. 1. Within the trading server, "costs and fees are dynamically changed in accordance with the prevailing exchange rate updated constantly." *See* Ex. C, '930 Patent, Cl. 12.  The Asserted Claims are also tied to a memory device and a transmitter. *Id*. The use of a specialized server and a transmitter are essential to the operation of the claimed systems. *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010).

KDP argues that the Asserted Claims recite generic trading computer components. KDP's Motion at 10. As explained above, the claimed "trading server" is not an "off-the-shelf generic computer component," but rather a specialized trading server coupled to a market and currency exchange server, wherein the costs and fees associated with the trading server are dynamically changed in accordance with the prevailing exchange rate updated constantly. Further, there is nothing in *Alice* or *DDR* or any of the other seminal cases on patent-eligibility that instructs one to disregard a claim element simply because that claim element can be found in the prior art, again in the 2007 era.

Indeed, almost all inventions consist of new combinations of old elements. *See DDR*, 773 F.3d at 1257 n.5 ("[o]n a fundamental level, the creation of new compositions and products based on combining elements from different sources has long been a basis for patentable inventions"). Thus, a

claim element is not conventional for purposes of a Section 101 analysis just because it appears in the prior art.

Rather, when cases such as *Alice* and *Bancorp* discussed the "routine" or "insignificant" use of computers, they were addressing a computer that merely is programmed to practice a prior art non-computerized method (e.g., "generating tasks to be performed in an insurance organization" as in Accenture). *Alice* recognized that modern computers can be programmed to facilitate many pre-computer tasks, and this is what *Alice* brings into focus for possible exclusion from patentability. *Alice* does not say that one should somehow ignore a claim element that is limited to a specialized computer because that computer is in the prior art.

To the contrary, the Asserted Claims recite a combination of elements, including a specialized processing device, that together define an architecture that address problems existing at the time of the claimed invention in 2010.

### B.   Claim Construction

In the Parties' Joint Letter Regarding Necessity of Prior Claim Construction to Decide Patent Eligibility under 35 U.S.C. § 101, Plaintiff asserted that the following terms require construction prior to the Court ruling on KDP's Motion.  (Dkt. No. 16, Amended Joint Letter).

---

B.  Claim Constructions Required for these Disputed Terms:
      a.  '773 patent, *claim 1.*
          i.  "decode string"
          ii.  "symbology associated with an object"
          iii.  "visual detection applications"
      b.  '752 patent, claim 1.
          i.  "image capturing device"
          ii.  "*receiving information about the object from the remote server wherein the information is based on the decode string of the object*"
          iii.  *"a display device associated with the portable electronic device"*
      c.  '369 patent, claim 1
          i.  "detecting symbology associated with the digital image using a portable electronic device"
          ii.  "symbology"
      d.  '190 patent, claim 1
          i.  "information about the digital image from the remote server wherein the information is based on the decode string"

---

*Figure 6 - Plaintiff Symbology's Portion of Joint Letter Identifying Specific Claim Limitations that Require Claim Construction.  (Dkt. No. 16-1 at 3).*

Oddly, in some sort attempt to just avoid the topic Defendant KPG wrote right above Symbology's list of these disputed terms, that Symbology has not made KPG aware of any disputed terms.  This is not true, as shown directly below that statement in the Joint Letter at page 3 (Dkt. 16-1 at 3), but also in Symbology's correspondence lead up to the meet and confer, where Symbology's counsel took the lead, and on July 11, 2023, provided KDP a list of disputed claim terms it wanted to meet and confer about.  Garteiser Decl. at ¶2; Exhibit 1.

BRIEF IN OPPOSITION TO MOTION TO DISMISS                                                            16



*Figure 7 - Excerpts from July 11, 2023 email from Counsel for Symbology to Defendant KDP's Counsel.*

Symbology Counsel's communication was a full week before KDP's counsel submitted the misleading statement made to the Court that Symbology had not notified KDP of any disputed terms. (*Compare* Exhibit 1 at 1(Figure 6) *with* Dkt. No. 16-1 at 2).

**FISH.**
FISH & RICHARDSON

The Honorable Chief Judge Rodney Gilstrap
July 18, 2023
Page 2

[I. (cont.) KDP's Position (page 2).]

Symbology has not made Defendants aware of any claim construction disputes that could affect the Court's § 101 analysis. Consequently, the alleged need for claim construction does not preclude granting Defendant's motion.

**II.      Plaintiff Symbology's Position – (Non-Moving Party)**

Claim construction is required to understand the moving party's position.   After Symbology sent Defendant its disputed issues for claim construction, Defendant used a prior template and stated that "Symbology has not made Defendants aware of any claim construction disputes that could affect the Court's § 101 analysis. Consequently, the alleged need for claim construction does not preclude granting Defendant's motion."  This is simply not accurate as the correspondence establishes exchanged among the parties.

**Claim Construction Issues Required for the Section 101 Analysis to be Completed.**

A. The sequence (or order) of the elements occurring in the asserted patent claims is highly relevant and is different within just the presently disclosed asserted patent claims:
   a. Claim 1, '773 patent;
   b. Claim 1, '752 patent;
   c. Claim 1, '369 patent; and
   d. Claim 1 of the '190 patent.

B. Claim Constructions Required for these Disputed Terms:
   a. '773 patent, *claim 1.*
      i. "decode string"
      ii. "symbology associated with an object"
      iii. "visual detection applications"
   b. '752 patent, claim 1.
      i. "image capturing device"
      ii. *"receiving information about the object from the remote server wherein the information is based on the decode string of the object"*
      iii.  *"a display device associated with the portable electronic device"*
   c. '369 patent, claim 1
      i. "detecting symbology associated with the digital image using a portable electronic device"
      ii. "symbology"
   d. '190 patent, claim 1
      i. "information about the digital image from the remote server wherein the information is based on the decode string"

*Figure 8 - Joint Letter Regarding Claim Construction for Section 101 Motion (Dkt. No.16-1 at 3).*

Terms such as "decode string" or "symbology associated with an object" or "symbology" are just three examples of the terms that Symbology asked KDP for its position on during the meet and confer process, but KDP ignored the requested by Symbology.   A proper construction of these terms

and phrases are required in order to properly evaluate the merits of KDP's Section 101 motion to dismiss. Further, KDP maintains that the Asserted Claims merely recite generic functional steps of a standard computer". (Motion at 15). But KDP again provides no proposed constructions and its characterization of "generic functional steps" completely ignores the teachings of the specification. (Dkt. No. 16-1; Dkt. No. 6).  For example, an algorithm is disclosed that spans three (3) pages. (Dkt. No. 1-2 at Figures 7A, 7B and 7C).  Plaintiff disagrees and A proper analysis of this assertion necessarily requires the proper construction of at least the terms identified in Plaintiff's disclosure in the Joint Letter.  (Dkt. No. 16-1 at 3).

Further, because KDP's motion is presented to the Court at the pleading stage, the Court is left with zero developed record from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art as of September 15, 2010, not to mention a lack of familiarity with the disclosures. For example, the Complaint states that the Asserted Claims were "novel, non-obvious, unconventional, and non-routine" and "overcame a number of specific technological problems in the industry and provided specific technological solutions." (Dkt. Nos. 1 at ¶¶16, 19, 22, 31, 36, 41).

Accordingly, KDP's motion is premature and should not be taken up until after claim construction has occurred in this case and the factual record as to the state of the prior art developed.

## III.   The Complaint Is Sufficiently Pled

The question on a Rule 12(b)(6) motion to dismiss is not whether the plaintiff will prevail on its claims, "but whether [the] complaint was sufficient to cross the federal court's threshold." *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (*citing Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). The Court must "accept all well-pleaded facts [in the complaint] as true and

view the facts in the light most favorable to the plaintiff." *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019) (citation omitted).

After viewing the facts most favorably to the plaintiff, "the court must then decide whether those facts state a claim for relief that is plausible on its face." *Script*, 170 F. Supp. 3d at 935 (citation omitted). The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *accord id.* at 559, (explaining that claims should only be dismissed at the pleading stage when there is "no 'reasonably founded hope that the [discovery] process will reveal relevant evidence'" (*quoting Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005))); *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) ("As the Supreme Court has explained, the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." (*quoting Twombly*, 550 U.S. at 556)). Courts "are not authorized or required to determine whether the plaintiff's plausible inference . . . is equally or more plausible than other competing inferences." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) (*citing Twombly*, 550 U.S. at 556). "[W]here the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief." *Motiva Pats., LLC v. Sony Corp.*, No. 9:18-CV-00180-JRG-KFG, 2019 WL 4737051, at *4 (E.D. Tex. Sept. 27, 2019) (*citing Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015)); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). At the 12(b)(6) stage, the court may decline to determine at this juncture whether asserted method claims require multiple steps or which actors must perform those steps. *BillJCo, LLC v. Cisco*

*Sys., Inc.*, No. 2:21-cv-00181-JRG, 2021 WL 6618529, at \*4 (E.D. Tex. Nov. 30, 2021) (*citing Actus, LLC v. Bank of Am. Corp.*, No. 2-09-cv-102-TJW, 2010 WL 547183, at \*2 (E.D. Tex. Feb. 10, 2010).

A motion to dismiss under Rule 12(b)(6) raises purely procedural questions that are governed by the law of the regional circuit. *In re Bill of Lading*, 681 F.3d at 1331 (*citing McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007)). In the Fifth Circuit, motions to dismiss "are viewed with disfavor and are rarely granted." *Lormand*, 565 F.3d at 232 (citation omitted); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (internal quotation marks and citation omitted).

Plaintiff has pled that "Defendant sells, advertises, offers for sale, uses, or otherwise provides QR codes associated with a website of Defendant, as well as any similar products (the "Accused Instrumentalities"), which infringe at least Claim 1 of the '773 Patent, Claim 1 of the '752 Patent, Claim 1 of the '369 Patent, and Claim 1 of the '190 Patent . These patent claims are shown for Defendant's Dr. Pepper® brand, as representative of the infringement that applies equally to Defendant's other brands including Canada Dry®, Snapple®, Bai®, and Mott's®." Dkt. No. 1 ¶44. Also, Plaintiff attached infringement charts for each of these four (4) claims pulled from each of the four (4) asserted patents.

Accordingly, the Complaint clearly alleges KDP are the direct infringers, and points to specific to a method for user to capture a QR code in a picture and then obtain a link and link too a website that provides additional information.

To the extent the Court finds any aspect of the Complaint is deficient, Plaintiff requests leave to amend additional facts in support of its claims. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

**IV.    Conclusion**

KDP's Motion should be denied. Without even a proper representative claim analysis, KDP simply fails to meet its burden. And Plaintiff has plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). As shown herein, the Asserted Claims are drawn to patent-eligible subject matter, and KDP has failed to prove otherwise.

Dated: August 7, 2023

Respectfully Submitted

*/s/* Randall Garteiser
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com
René A. Vazquez
   Virginia Bar No. 41988
   rvazquez@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF**
**INTERCURRENCY SOFTWARE LLC**