IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **SYMBOLOGY INNOVATIONS, LLC,**<br><br>    Plaintiff,<br><br>    v.<br><br>**KEURIG DR. PEPPER, INC.,**<br><br>    Defendant. | **CASE NO. 2:23-CV-00249-JRG**<br><br>**JURY TRIAL DEMANDED** |

**KEURIG DR PEPPER INC.'S REPLY IN SUPPORT OF ITS RULE
12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

I. THE ASSERTED PATENTS ARE INVALID ........................................................................ 2

    A. Claim 1 of the '752 patent is representative ........................................................ 2

    B. *Alice* Step One: the asserted claims are directed to an abstract idea ............................ 3

    C. *Alice* Step Two: the claims recite no inventive concept ..................................... 6

    D. There are no factual disputes preventing a ruling at the Rule 12 stage ......................... 8

    E. There are no claim construction disputes preventing a ruling at the Rule 12 stage .... 9

II. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  134 S. Ct. 2347 (2014) ................................................................................................... *passim*

*Boom! Payments, Inc. v. Stripe, Inc.,*
  839 F. App'x 528 (Fed. Cir. 2021) .............................................................................................8

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018) ............................................................................................. 2, 8

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016) ..................................................................................................7

*Emerson Elec. Co. v. SIPCO, LLC,*
  141 S. Ct. 106, 207 L. Ed. 1049 (2020) .....................................................................................4

*Idexx Labs., Inc. v. Charles River Labs., Inc.,*
  CV 15-668-RGA, 2016 WL 3647971 (D. Del. July 7, 2016) ....................................................4

*Jedi Techs., Inc. v. Spark Networks, Inc.,*
  No. CV 1:16-1055-GMS, 2017 WL 3315279 (D. Del. Aug. 3, 2017) .................................. 1, 9

*Monument Peak Ventures, LLC v. Toshiba Am. Bus. Sols., Inc.,*
  No. SA CV 19-02181-DOC-DFM, 2020 WL 6050597 (C.D. Cal. Aug. 12, 2020) ..................3

*MyMail, Ltd. v. ooVoo, LLC,*
  934 F.3d 1373 (Fed. Cir. 2019) ..................................................................................................9

*Nexrf Corp. v. Playtika Ltd.,*
  No. 320CV00603MMDCLB, 2021 WL 2874114 (D. Nev. July 7, 2021) ................................5

*PPS Data, LLC v. Jack Henry Assocs., Inc.,*
  No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019) ..................................3

*Secured Mail Solutions LLC v. Universal Wilde, Inc.,*
  873 F.3d 905 (Fed. Cir. 2017) ......................................................................................... 1, 5, 6, 7

*Simio, LLC v. FlexSim Software Products, Inc.,*
  983 F.3d 1353 (Fed. Cir. 2020) ..................................................................................................8

*SIPCO, LLC v. Emerson Elec. Co.,*
  939 F.3d 1301 (Fed. Cir. 2019) ..................................................................................................4

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) ........................................................................................3, 8, 9

**Other Authorities**

Fed. R. Civ. P. 12 ............................................................................................................................8, 9

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................2, 8

Symbology has filed over 220 lawsuits asserting claims of the same asserted patents[1] here or of other patents in the same family. In many of those lawsuits, faced with similar § 101 arguments as those presented by KDP here, Symbology walked away and dismissed its claims with prejudice rather than defend its allegations on the merits. This time, Symbology is attempting to delay the Court's determination by purporting to make up a claim construction issue that prevents the Court from ruling on § 101 on the pleadings. Importantly, however, Symbology has failed to propose any constructions for its allegedly disputed terms. (*See* Dkt. No. 16-1.) Regardless, any proposed construction could not alter the patent-ineligibility analysis, nor does Symbology explain how one might, which is fatal to its attempt to oppose a ruling on the pleadings. *See, e.g.*, *Jedi Techs., Inc. v. Spark Networks, Inc.*, No. CV 1:16-1055-GMS, 2017 WL 3315279, at *6 (D. Del. Aug. 3, 2017) ("Here, [plaintiff] failed to identify any specific claims which, if scrutinized during claim construction, could impact the [§ 101] analysis. Thus, the court considers it appropriate to analyze patent eligibility at this stage in the present case.") (citations omitted). Consequently, this motion is ripe for the Court's consideration.

The asserted patents describe the concept of data recognition and retrieval, which is an abstract idea ineligible for patenting. Moreover, neither the specification nor any claim identifies a specific way of implementing this concept. Tellingly, Symbology's Opposition does not meaningfully address KDP's recited legal authority that upheld the ineligibility of claims similar to those in the asserted patents. *See Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d

---

[1] The asserted patents are U.S. Patent Nos. 7,992,773, 8,424,752, 8,651,369, and 8,936,190. Symbology oddly refers to an "'863 Patent" and a "'930 Patent," but these are not patents asserted in this litigation. (*See* Opp. at 14.)

1

905, 912 (Fed. Cir. 2017) (affirming district court's grant of motion to dismiss pursuant to Rule 12(b)(6) for patent ineligibility of patents directed to decoding barcodes).

To the extent the claims of the asserted patents capture any purported improvements, those improvements are to the abstract idea itself. The Federal Circuit has held that "[a]s a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."). That holding applies here.

The claims' recitation of non-specific limitations makes clear that the patentee intended to lay claim to any action whatsoever resulting in practice of the general abstract idea. Such claims are precisely the type of claims that courts have repeatedly found ineligible. When there is no plausible reading of a patent that would enable it to satisfy the threshold inquiry under § 101, an early Rule 12(b)(6) dismissal is appropriate.

To avoid waste of judicial and party resources further litigating invalid patents, KDP requests the Court dismiss Symbology's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

I. **THE ASSERTED PATENTS ARE INVALID**

　　A. **Claim 1 of the '752 patent is representative**

Symbology contends that KDP fails to demonstrate that Claim 1 is representative for the purposes of the § 101 analysis. (Opp. at 1-5.) Symbology's only rationale is that KDP's analysis was incomplete and, essentially, that other claims exist. (*See id.* at 2-5.) Symbology merely lists the dependent claims of the '752 Patent, without any analysis, and concludes that there are "non-representative differences." (*See id.*) This is insufficient.

KDP met its burden by analyzing all the remaining claims and demonstrating those claims were similarly directed to the same abstract idea as representative Claim 1. (*See* Dkt. 6 ("Mot.") at 7-8.) This shifted the burden to Symbology to demonstrate a material difference between the claims. *See PPS Data, LLC v. Jack Henry Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis). Merely listing dependent claims and concluding that Claim 1 is not representative does not meet this burden. Even taking the dependent claims into account, they do not constitute "a difference material to the § 101 analysis." *PPS Data,* 2019 WL 1317286, at *5. As addressed in KDP's Motion, these dependent claims merely disclose token pre- and post-solution activities, and nothing about these limitations elevates them above the abstract idea of data recognition and retrieval. (*See* Mot. at 7-8.); *see also Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1362 (Fed. Cir. 2023) ("[T]he remaining dependent claims merely add trivial variations of the abstract idea—performing matches based on gender, varying the number of questions asked, and/or displaying other users' answers—that do not change the focus of the asserted claims."). Symbology's "conclusory arguments against the representative nature of the claims" should be rejected. *Monument Peak Ventures, LLC v. Toshiba Am. Bus. Sols., Inc.*, No. SA CV 19-02181-DOC-DFM, 2020 WL 6050597, at *3 (C.D. Cal. Aug. 12, 2020).

**B.     *Alice* Step One: the asserted claims are directed to an abstract idea**

The claims of the asserted patents are directed to an unpatentable abstract idea because the claims cover nothing more than the concept of data recognition and retrial. The breadth of the idea comes not from an over-generalization or over-simplification on the part of KDP, as Symbology contends (*see, e.g.*, Opp. at 11), but from the very breadth of the claims, as "the 'level of abstraction' employed . . . in describing the claims must be consonant with the level of abstraction

3

expressed in the claims themselves." *Idexx Labs., Inc. v. Charles River Labs., Inc.*, CV 15-668-RGA, 2016 WL 3647971 at *4 (D. Del. July 7, 2016) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)). KDP's characterization is at an appropriate level of abstraction derived from the claims themselves. The abstract idea is broad, sure, but that is the quintessential characteristic of abstract ideas and highlights the "pre-emption concern that undergirds [the] § 101 jurisprudence." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014). Accordingly, it is enough for KDP to identify the abstract idea to which the claims are directed, which it has done. *See id.*

Bizarrely, Symbology's characterization of the claims is not even related to the asserted patents in this case:

> "The focus of the claimed advance over the prior art in this case is a system that allows for **a trading server** coupled to a **market and currency exchange server**, wherein the costs and fees associated with the trading server are dynamically changed in accordance with **the prevailing exchange rate** updated constantly. This is not an abstract idea." (Opp. at 11) (emphasis added)
>
> "[T]he Asserted Claims have a clear, concreate and tangible form in that they are direct to providing utilize [sic] an unconventional **specialty trading server** coupled to a **market and currency exchange server** . . . ." (*Id.* at 12) (emphasis added).

There is nothing in the asserted patents that addresses a trading server or market and currency exchange server. *See, e.g.*, '752 Patent; '773 Patent; '369 Patent; '190 Patent. Whatever claims Symbology is referencing, they are not at issue in this case.

Furthermore, Symbology's position regarding a "technological invention" is irrelevant. The case cited by Symbology was vacated by the Supreme Court and related to whether a patent is excluded from a covered business method ("CBM") review. (Opp. at 11); *Emerson Elec. Co. v. SIPCO, LLC*, 141 S. Ct. 106, 207 L. Ed. 1049 (2020); *SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d 1301, 1303 (Fed. Cir. 2019) ("In determining that the '842 Patent qualifies for CBM review, the Board found that the patent is not excluded from review under the statutory 'technological

4

invention' exception."). Symbology is relying on overturned case law that is also irrelevant to § 101.

In contrast, KDP cited several cases in which courts have found patents similar to the asserted patents to be directed to abstract ideas. (Mot. at 10-13.) Symbology's Opposition does not meaningfully distinguish these cases and given the similarity of these cases to the claims-at-hand, Symbology's reluctance to adequately address these cases speaks volumes. *See Nexrf Corp. v. Playtika Ltd.*, No. 320CV00603MMDCLB, 2021 WL 2874114, at *5 (D. Nev. July 7, 2021) ("As [defendant] argues, Claim 1 of the '229 patent is analogous to the claims found abstract in *Planet Bingo* . . . . And Plaintiff's decision not to address *Planet Bingo* in response to [defendant]'s motion to dismiss indeed suggests that Plaintiff has no convincing response.") (citation omitted). For example, in *Secured Mail*, the Federal Circuit held claims directed to encoding and decoding a bar code invalid under both *Alice* steps. *Secured Mail*, 873 F.3d at 907. The claims at issue in *Secured Mail* were "directed to the abstract process of communicating information about a mail object using a personalized marking"—i.e., barcodes. *See id.* at 911. Similarly, here, the claims are directed to the abstract concept of data recognition and retrieval using an "object's symbology, **e.g., a barcode** . . . ." '752 Patent at Abstract (emphasis added).

Similarly, in *Recognicorp, LLC v. Nintendo Co., Ltd.*, the Federal Circuit held the patent claim at issue to be directed toward the abstract idea of "encoding and decoding image data." 855 F.3d 1322, 1324 (Fed. Cir. 2017). The court explained that encoding and decoding data is "an abstract concept long utilized to transmit information" and provided several examples of long-utilized methods of encoding and decoding of data to transmit information: "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by

5

sea' signaling system all exemplify encoding at one end and decoding at the other end." *Id.* Symbology does not address *Secured Mail* or *Recognicorp* in its Opposition.

Finally, Symbology concludes that *Content Extraction* is not applicable because "a **symbol** is being detected, not a well-known **character** that even a human could recognize. There is no way a human being can look at a **symbol** and know where that would send a person that captured **a QR code** . . . ." (Opp. 12-13.) This is a distinction without a difference. Whether defined as a symbol or a character, the underlying abstract idea is still data recognition and retrieval. Symbology's attempt to write QR code into the claims, which broadly require "symbology," does not change the nature of the claims from data recognition and retrieval and does not traverse the examples the Federal Circuit gave in *Recognicorp* regarding human implemented methods of "encoding at one end and decoding at the other end." '752 Patent, Cl. 1; *Recognicorp*, 855 F.3d at 1324. The claims of the asserted patents cannot be meaningfully distinguished from *Secured Mail*, *Recognicorp*, or *Content Extraction*. The claims of the asserted patents are thus invalid for the same reasons.

C.   *Alice* **Step Two: the claims recite no inventive concept**

The claims of the asserted patents also contain no inventive concept, and Symbology's Opposition does not traverse this issue. First, Symbology's Opposition does not address the asserted patents at all but rather addresses patents relating to a "specialty trading server" and the unrelated and unasserted '863 Patent and '930 Patent. Second, the claims do not disclose any special way to implement the idea of data recognition and retrieval, nor do they require any specific, improved hardware or software configuration. To the contrary, neither the claims nor the specification describes how to implement the claims in any particular or inventive manner. *See Secured Mail*, 873 F.3d at 911 ("Merely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention."); *see also Coding Techs.*, 2020 WL 8410430, at *6 ("The Court also notes that '[t]he

use of barcodes was commonplace and conventional' as early as 2001, as was the concept of a barcode-encoded URL.") (quoting *Secured Mail*, 873 F.3d at 912). The claims are therefore invalid under § 101. *See Secured Mail*, 873 F.3d at 912. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). There is thus no limitation in the claims that could be considered an inventive concept.

Symbology makes much ado about the machine-or-transformation test, argues that this "confirms the claims are patent-eligible," and then fails to tie its argument to anything in the asserted patents. (*See* Opp. at 14.) Symbology argues that the asserted claims utilize a "market exchange server," and a "specialty trading server," where "costs and fees are dynamically changed . . . with the prevailing exchange rate." *Id.* It cites to an "'863 Patent" and a "'930 Patent" and concludes that the "trading server" is not a generic component. *Id.* As addressed above, the asserted patents are devoid of any reference to a specialty trading server, do not include '863 or '930 patents, and do not relate to currency exchange. Symbology has failed to provide any argument regarding the patents at issue in this case, and the Court could end its analysis here.

Symbology provides only a generic argument regarding the machine-or-transformation test, statements that a claim element is not conventional "just because it appears in the prior art," and attorney argument regarding what *Alice* and *Bancorp* recite in terms of using a "specialized computer." (*Id.* at 14-15.) None of this is applicable. The claims of the asserted patents are not tied to a particular machine or apparatus and do not transform a particular article into a different state or thing, if those are even appropriate tests for determining eligibility after the Supreme Court's opinions in *Bilski* and *Alice*. *See* '752 Patent, Cl. 1. Furthermore, Symbology's arguments regarding prior art are not relevant to the § 101 analysis. Its uncited interpretations of *Alice* and

7

*Bancorp* are baseless, particularly because there is no "specialized computer" in the asserted patents. (*See* Opp. at 15.) Finally, any purported inventiveness is irrelevant because it improves upon only the abstract idea of data recognition and retrieval. "At *Alice* step two, it is irrelevant whether [a particular limitation] may have been non-routine or unconventional as a factual matter." *BSG Tech*, 899 F.3d at 1290-91. Symbology does not and cannot claim that it invented or improved a specific computer, computer module, or other technology. The claims recite the use of existing hardware or software components, and thus, to the extent that is any improvement at all, it is an improvement to the abstract idea and improper grounds to support eligibility. *See id.*

**D.     There are no factual disputes preventing a ruling at the Rule 12 stage**

The issue of patent eligibility is ready for the Court's consideration because there are no factual or claim construction issues. Symbology contends it made allegations in its Complaint that raise genuine issues of material fact. (Opp. at 5.) As KDP explained in its Motion to Dismiss, however, the statements in Symbology's Complaint do not contain factual allegations—they are legal conclusions by which Symbology attempts to unilaterally declare that its patents are directed to eligible subject matter. (*See* Mot. at 17-18); *see also Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory.").

The Federal Circuit consistently rejects this tactic. *See Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 533 (Fed. Cir. 2021) ("[Plaintiff] makes numerous allegations that the patented inventions are not routine or conventional at the time of the invention. But while we are required to accept the plaintiff's allegations as true in reviewing the grant of a motion to dismiss, we disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).") (citing *Simio LLC*, 983 F.3d at 1365 (Fed. Cir. 2020)) (internal citations omitted); *see also Trinity Info Media*, 72 F.4th at 1363 ("Trinity argues that the district court's analysis at *Alice/Mayo* step one failed to

8

appreciate several statements in its amended complaint demonstrating that the patents included an advance over the prior art . . . . These statements do not change our analysis at *Alice/Mayo* step one.").

### E. There are no claim construction disputes preventing a ruling at the Rule 12 stage

With respect to claim construction, Symbology incorrectly contends that "[a] proper construction of [certain] terms and phrases are required in order to properly evaluate the merits of KDP's Section 101 motion to dismiss." (Opp. at 18-19.) Symbology has misunderstood the law. As the Federal Circuit explained, "**if the parties raise a claim construction dispute at the Rule 12[] stage**, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019) (emphasis added). Here, there are no claim construction disputes, as neither KDP nor Symbology has proposed any claim constructions, much less any reason why any claim construction would affect the § 101 analysis. Symbology "must propose a **specific claim construction or identify specific facts** that need development **and explain why those circumstances must be resolved** before the scope of the claims can be understood for § 101 purposes." *Trinity*, 72 F.4th at 1361 (emphasis added). Symbology has done neither. *See, e.g.*, *Jedi Tech.*, No. 1:16-cv-1055-GMS, 2017 WL 3315279, at *6 (deciding § 101 eligibility without claim construction where plaintiff failed to offer any specific claim construction issues that would affect the analysis). Simply stating that claim terms should be construed is insufficient for Symbology to meet its burden, and there is no claim construction that would affect the Court's § 101 analysis. Consequently, this motion is ripe, and all of Symbology's arguments to the contrary are incorrect.[2]

---

[2] Symbology spends almost 5 pages of its Opposition and includes an affidavit to mischaracterize KDP's position. (*See* Opp. at 15-19, Ex. A.) As stated in the Joint Letter Regarding Claim

## II.     CONCLUSION

For the foregoing reasons and the reasons stated in KDP's Motion to Dismiss, KDP respectfully requests this Court dismiss Symbology's Complaint for failure to state a claim upon which relief can be granted. KDP respectfully requests dismissal with prejudice because leave to amend would be futile.

---

Construction, Symbology did not make KDP aware of any claim construction disputes that "**could affect the Court's § 101 analysis.**" (Dkt. 16-1.) In both its communications and its Opposition, Symbology merely lists claim terms and concludes that construction is necessary for § 101 purposes. (*See* Opp. at 15-19.)

Dated: August 28, 2023

Respectfully submitted,

/s/ Rodeen Talebi
Neil J. McNabnay
Texas Bar No. 24002583
Ricardo J. Bonilla
Texas Bar No. 24082704
Rodeen Talebi
Texas Bar No. 24103958
Sarika Patel
Texas Bar No. 24073520
mcnabnay@fr.com
rbonilla@fr.com
talebi@fr.com
patel@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**ATTORNEYS FOR DEFENDANT
KEURIG DR. PEPPER, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy has been electronically filed using the CM/ECF filing system on August 28, 2023 which automatically sends email notifications to all counsel of record and which will permit viewing and downloading of same from the CM/ECF system.

/s/ Rodeen Talebi
Rodeen Talebi